UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Eufronio Jollado Baduria and
Daniel Llagas, Individually and on behalf      :   Case No.: 19-cv-00364(SJF)(GRB)
of all persons similarly situated
                    *Plaintiffs*      :

                                                    :

vs.

                                                    :

SEALIFT HOLDINGS, INC.,
SEALIFT, INC.,
SEALIFT INC. OF DELAWARE,      :
BLACK EAGLE SHIPPING, LLC
FORTUNE MARITIME, LLC,      :
SAGAMORE SHIPPING, LLC,
SEALIFT LLC,
SEALIFT TANKSHIPS, INC., and      :
REMINGTON SHIPPING, INC.
                    *Defendants*      :

**MEMORANDUM IN SUPPORT OF MOTION
TO STAY, DISMISS OR TRANSFER ACTION**

1

3338952-1

Defendants Sealift Holdings, Inc., Sealift, Inc., Sealift, Inc. of Delaware, Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sagamore Shipping, LLC, Sealift LLC, Sealift Tankships, Inc., and Remington Shipping, Inc. (collectively "Sealift" or "Defendants") submit this Memorandum in Support of their Motion: a) to stay the instant case so that the Court in *Llagas v. Sealift Holdings LLC*, Case 2:17-cv-00472 (SMH) (KK) (W.D. La) ("*Llagas*"), a substantially similar putative class action that has been pending in the Western District of Louisiana for two years, can determine under the "first-to-file rule" which of the two cases proceeds, and in which forum; or alternatively, b) to dismiss this case with prejudice pursuant to the "first-to-file" rule and FRCP 12(b)(6); or c) to transfer this case to the Western District of Louisiana pursuant the "first-to-file" rule and/or 28 USCA §1404(a), for the convenience of parties and witnesses and in the interest of justice.[1]

**Factual Background**

I.   *PLAINTIFF LLAGAS'S PUTATIVE CLASS ACTION IN LOUISIANA*

On March 17, 2017, Plaintiff Llagas filed a Petition in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, commencing *Daniel Gonzales Llagas v. Sealift Holdings, Inc.* (the "Petition"), Civil Action No. 2017-1086 against seven of the nine Defendants.[2] In the Petition, Plaintiff Llagas alleged that Defendants have employed him and other foreign nationals "since at least 2015" in a manner inconsistent with U.S. laws. Specifically, Plaintiff alleged that during his employment the Defendants committed violations of 46 U.S.C. §§ 8601,

---

[1] The *Llagas* Docket is attached to the Declaration of Daniel A. Tadros dated February 20, 2019 as Ex. A. All further references herein to "Ex. __" denote exhibits to this declaration.
[2] *See* Ex. B: Petition, *Llagas* ECF 1-1. Plaintiff Llagas's suit named Sealift Holdings, Inc., Sealift, Inc., *Black* Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC, and Remington Shipping, LLC "The Louisiana Defendants"). In the instant suit, Plaintiffs have added "Sealift Incorporated of Delaware" and "Sealift, LLC" as additional defendants.

8701, and 10302, and that as a result, the Defendants were liable to him and the class he sought to represent for employment in violation of U.S. law pursuant to 46 U.S.C. § 11107, entitling them to an award of delay and penalty wages under 46 U.S.C. § 10313. *See* Ex. B: *Llagas* ECF 1-1, ¶¶ 6-8, 11-13. Notably, Plaintiff denied in the Petition that he and the members of his proposed class had signed any employment contract(s) with the Defendants, and alleged that he had "no agreement in writing to arbitrate any dispute with any Sealift Defendant..." *See* Ex. B: *Llagas* ECF 1-1, ¶¶ 15-16.

Based on the foregoing claims, Plaintiff Llagas prayed for certification of a class constituted as follows:

> [A]ll foreign nationals, at any time since January 1, 2015, engaged as seafarers or members of the crews of the M/V BLACK EAGLE, the M/V ADVANTAGE, the M/V CAPT. DAVID I. LYON, and the M/V CAPT. STEVEN L BENNETT in violation of United States law, specifically 46 U.S.C. § 8106 and regulations promulgated according to 46 U.S.C. § 8106, who sustained loss of wages, including overtime wages required by 46 U.S.C. § 10101, *et seq.*, delay and penalty wages pursuant to 46 U.S.C. § 10313, the highest rate of pay pursuant to 46 U.S.C. § 11107, punitive damages, and/or other damage under any theory of recovery as the result of the ongoing and continuous violations of Title 46 of the United States Code, and the General Maritime Law of the United States.

*See* Ex. B: *Llagas* ECF 1-1, ¶¶ 18.

On March 29, 2017, the Louisiana Defendants removed Plaintiff's state court suit to the United States District Court for the Western District of Louisiana on the basis of federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332, and admiralty jurisdiction under 28 U.S.C. § 1333. *See* Ex. C: Notice of Removal, *Llagas* ECF 1. As regards federal question jurisdiction, the Louisiana Defendants asserted in their Notice of Removal that Plaintiff Llagas was at all times employed onboard Sealift's vessels pursuant to written Contracts of Employment and Standard Terms and Conditions on forms approved by the Philippine Overseas Employment Administration (POEA), all of which were executed by Plaintiff, and all of which

included within their Standard Terms and Conditions a clause requiring arbitration of any disputes arising out of Plaintiff's employment in the Philippines. The existence of written contracts containing arbitration agreements gives rise to federal question jurisdiction under the Convention for the Recognition and Enforcement of Foreign Arbitration Awards as enacted and implemented by 9 U.S.C. § 201, *et seq.*

On May 2, 2017, the Louisiana Defendants filed a Motion to Compel Arbitration asking the district court to recognize the enforceability of the arbitration agreement contained within Plaintiff Llagas's employment contracts, and to stay further litigation.

Since Defendants removed Plaintiff Llagas's suit to federal court and moved for enforcement of his agreement to arbitrate pursuant to federal law and treaty, Plaintiff Llagas has attempted one procedural roadblock after another to avoid the U.S. District Court for the Western District of Louisiana enforcing Plaintiff's agreement to arbitrate. Plaintiff filed a Motion to Transfer Venue to the District Court for the Middle District of Louisiana, which Magistrate Judge Kathleen Kay denied. *See* Ex. A: *Llagas* ECF 6, 22. Plaintiff appealed that denial to the district judge, who affirmed the Magistrate Judge's holding. *See* Ex. A: *Llagas* ECF 53. Plaintiff then filed a Motion for Trial By Jury on the issue of arbitrability and a Motion to Certify Class, both of which Magistrate Judge Kay also denied, the latter upon finding that Plaintiff Llagas lacks standing to represent a putative class because he agreed to arbitrate his claims.[3] *See* Ex. A: *Llagas* ECF 8, 36, and Ex. D: Report and Recommendation dated July 26, 2018, *Llagas* ECF 55. In the midst of those motions, Plaintiff also filed three separate Motions to Stay, each of which sought to defer briefing and consideration on Sealift's Motion to Compel Arbitration, and two of which successfully stalled briefing of Sealift's motion. *See* Ex. A: *Llagas* ECF 14, 24, 29.

---

[3] Plaintiff did not appeal that portion of the Magistrate's ruling relating to a jury trial on the issue of arbitrability.

Ultimately, briefing on Defendants' Motion to Compel Arbitration was completed on August 18, 2017, by the filing of Sealift's Reply Memorandum in Support. *See* Ex. A: *Llagas* ECF 44. On July 27, 2018, Magistrate Judge Kay issued a Report and Recommendation, which, after thorough analysis of Plaintiff Llagas's arguments against the enforcement of his written agreement to arbitrate, found that Plaintiff Llagas's wage claims were all "intertwined with" his employment and therefore covered by the arbitration provision in his employment contract. *See* Ex. D: *Llagas* ECF 55, p. 8. Magistrate Judge Kay recommended that the Louisiana suit be stayed pending arbitration in the Philippines. *See* Ex. D: *Llagas* ECF 55.

On August 10, 2018, Plaintiff Llagas filed Objections appealing the Magistrate Judge's Recommendation to the District Judge, along with a Stipulation in which Plaintiff Llagas attempted to nullify Magistrate Judge Kay's Report and Recommendation by disavowing any reliance on his employment agreements to prosecute his claim for unpaid wages. *See* Ex. A: *Llagas* ECF 58, 59. Chief Judge Maurice Hicks granted Plaintiff permission to file his Stipulation and, in light of the Stipulation, referred the issue of arbitrability back to Magistrate Judge Kay for further consideration in light of Plaintiff's disavowal of his employment contracts. *See* Ex. E: Order dated September 24, 2018, *Llagas* ECF 68; Ex. A: *Llagas* ECF 69.

On February 5, 2019, after additional briefing by the parties in October 2018 on the effect (if any) of Plaintiff Llagas's Stipulation, Magistrate Judge Kay issued a Supplemental Report and Recommendation *again* finding that Plaintiff's claims for wages were inextricably intertwined with his employment and therefore subject to arbitration. *See* Ex. F: Report and Recommendation dated February 5, 2019, *Llagas* ECF 76. Magistrate Judge Kay reasoned that Plaintiff faced a choice, and could either claim to have been employed by Sealift and assert a claim for statutory wages, which

were subject to arbitration, or disavow his employment by Sealift and waive any claim for allegedly unpaid wages, but not both:

> Plaintiff has provided no basis for establishing his alleged unlawful engagement by defendant Sealift save that he was "employed as [a seaman] on vessels of the Sealift Fleet." Accordingly, either: (1) he was never unlawfully engaged under Section 11107 because he was never engaged by Sealift; or (2) he was engaged by defendant Sealift through the Employment Contract signed by plaintiff, [and Sealift's crewing agents] Magsaysay, and Lots. Since plaintiff's stipulation still asserts a claim against Sealift under 46 U.S.C. § 11107, we conclude he pleads the latter. Accordingly, plaintiff's claims necessarily rely on the Employment Contract and defendants may rely on the arbitration clauses incorporated therein.

*See* Ex. F: *Llagas* ECF 76, pp. 3-4.

Plaintiff Llagas has now objected to Magistrate Judge Kay's Supplemental Report and Recommendation referring his claims to arbitration for the second time. *See* Ex. G: *Llagas* ECF 77.

## II.   *PLAINTIFFS' DUPLICATIVE PUTATIVE CLASS ACTION IN NEW YORK*

On January 17, 2019, following Magistrate Judge Kay's first Report and Recommendations referring Plaintiff Llagas's claims to Philippines Arbitration and with a second decision looming which was likely to also refer the claims to Philippines Arbitration despite Plaintiff Llagas's Stipulation, Plaintiff Llagas joined with Plaintiff Baduria to file the instant suit, which is substantively practically identical to *Llagas*. In that regard: (a) one of the two lead plaintiffs and seven of the nine Sealift entities named in the two suits are identical, as are the attorneys representing the plaintiffs; (b) the instant suit alleges identical violations and causes of action under 46 U.S.C. §§ 8106, 8701, 10302, 10313, and 11107; (c) the putative classes sought for certification in both suits would significantly overlap (if not be nearly identical), as both suits seek class certification on behalf of all foreign nationals who worked as seafarers onboard Sealift's vessels during partially overlapping time periods; and (d) both suits deny the existence of binding written

agreements between the lead plaintiffs and Sealift, despite the Western District of Louisiana having held twice that a written agreement does exist between Plaintiff Llagas and Sealift.

## Argument

I. THIS CASE IS DUPLICATIVE OF THE LLAGAS SUIT PENDING IN THE WESTERN DISTRICT OF LOUISIANA SINCE 2017 AND MUST BE ANALYZED UNDER THE "FIRST-TO-FILE" RULE

The "first-to file" rule provides that, absent certain exceptions, only the first-filed action should proceed when multiple lawsuits involving the same parties and issues are pending in different jurisdictions. *Speedfit LLC v. Woodway United States*, 53 F.Supp.3d 561, 571 (E.D.N.Y. 2014). As a rule, "[w]here there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)) (alteration in original). This rule "embodies considerations of judicial administration and conservation of resources" by avoiding duplicative litigation. *First City, id.* at 80. Its purpose is to "avoid conflicting decisions and promote judicial efficiency while respecting principles of federal comity." *Speedfit, id.*

Application of the "first-to-file" rule does not require identical parties in the cases, but merely requires "substantial overlap." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012). Likewise, the factual and legal issues presented by the cases need not be identical, but must overlap. *Id., Intema, Ltd. v. NTD Labs, Inc.*, 654 F. Supp. 2d 133 141 (E.D.N.Y. 2009) (noting that the "first-filed" rule can be invoked where significant overlapping factual issues exist between the two pending cases); *MasterCard Int'l Inc. vs. Lexcel Solutions*, 2004 U.S. Dist. Lexis 10906 at *23-24, 2004 WL 1368299 at *7-8 (S.D.N.Y. June 16, 2004) (presumption in favor of the forum where the first action is filed where the record presents "sufficient overlapping factual and legal issues" between two cases); *Mfrs Hanover Trust Co. v.*

*Palmer Corp.*, 798 F.Supp. 161, 166-167 (S.D.N.Y. 1991) (applying "first-to-file" rule when, although causes of action differed, cases involved same underlying facts, witnesses and parties and stating that "the interests of justice require that the cases be related, not identical.")

The instant case and the *Llagas* Louisiana case present sufficient overlap that the "first-to-file" rule should apply. Both cases are putative class actions brought by the same counsel. The complaint in *Llagas* is *Llagas* ECF 1-1 and, also is Exhibit B to the Declaration of Daniel A. Tadros dated February 20, 2019.[4] The Complaint in the instant action is *Baduria* ECF 1. The named Plaintiff and putative class representative in the *Llagas* suit, Daniel Gonzales Llagas is one of the two named Plaintiffs and putative class representatives in the instant suit. Ex. B: *Llagas* Petition ¶ 1, *Baduria* Complaint ¶ 1. All of the defendants in the *Llagas* suit are named as defendants in the instant suit. Ex. B: *Llagas* Petition ¶ 2, *Baduria* Complaint ¶ 2. Although the instant suit names two defendants not listed in the *Llagas* suit, Sealift Inc. of Delaware and Sealift LLC, it also alleges that Sealift Inc. of Delaware "merged with and became Sealift LLC" (*Baduria* Complaint, ¶ 13); moreover, each Complaint alleges that the defendants named therein operated as a single business entity (Ex. B: *Llagas* Petition ¶ 3, *Baduria* Complaint ¶ 8). Thus, as alleged by the Plaintiffs themselves, the defendants in the two suits are the same.

Both Complaints allege violations of the same statutes, 46 U.S.C. §§8106 (Ex. B: *Llagas* Petition ¶ 6, *Baduria* Complaint ¶¶ 17, 43-44), 8701 Ex. B: *Llagas* Petition ¶ 6, *Baduria* Complaint ¶¶ 17, 22-24), 10302; Ex. B *Llagas* Petition ¶ 8, *Baduria* Complaint ¶¶ 17, 25-27), 10313 Ex. B: *Llagas* Petition ¶ 13, *Baduria* Complaint ¶¶ 17, 29) and 11107 (Ex. B: *Llagas* Petition ¶¶ 12, 18, *Baduria* Complaint ¶¶ 17, 30-31), and seek the 46 U.S.C. §11107 remedy of the "highest rate of

---

[4] A district court reviewing a motion to dismiss under Rule 12(b)(6) may consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits. *Gertskis v. United States EEOC*, 2013 U.S.Dist.39110 at *3-6, (S.D.N.Y. March 20, 2013) citing *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003).

8

3338952-1

pay," delay or penalty wages under 46 U.S.C. §10313, and punitive damages (Ex. B: *Llagas* Petition ¶ 18, *Baduria* Complaint ¶ 43). Both cases seek to certify a class of seamen comprised of foreign nationals whom, Plaintiffs allege, were employed for a cumulative period exceeding 60 days contrary to 46 U.S.C. §8106; were not properly certificated pursuant to 46 U.S.C. §8701; and were not allowed or permitted to sign shipping articles in violation of 46 U.S.C. §10302. Ex. B: *Llagas* Petition ¶¶ 6-8, *Baduria* Complaint ¶¶ 43-44. Both cases, in an effort to circumvent the POEA contract provisions mandating arbitration of Plaintiffs' claims in the Philippines, allege that Plaintiffs (Filipino citizens and domiciliaries) are not relying upon any written contract or agreement in bringing their actions (contradicting the prior holdings of the Louisiana court, discussed above). Ex. B: *Llagas* Petition ¶ 11, *Baduria* Complaint ¶¶ 40-42.

The only difference between the two suits is that in the second suit, Plaintiffs' counsel seeks to expand the class from the period of "between January 1, 2015 and the present" (Ex. B: *Llagas* Petition ¶18) to "from and after July 11, 2006 to the date the Court's order of class certification becomes final and non-appealable" (*Baduria* Complaint ¶44). The time period of the putative class overlaps, therefore, for at least three years, with one of the named plaintiffs in the second suit (perhaps both) belonging to the putative class in the first suit. The lengthier time period sought by class counsel for the second (*Baduria*) class should be of little weight in the assessment whether sufficient overlap in the two suits exists; as the first class would be a subset of the second, any decision in the first suit would necessarily affect the second, and plainly then only one suit should proceed. Moreover, should Plaintiff wish to expand the *Llagas* class (which is not yet certified), Rule 15 provides a procedure for them to amend their Complaint to do so. Indeed,

Plaintiff alludes to the filing of an amended complaint in *Llagas* to expand the *Llagas* class period back to January 1, 2013.[5]

The Second Circuit has recognized only two exceptions to the "first-to-file" rule: (1) where the "balance of convenience" favors the second-filed action (see, e.g., *Motion Picture Lab. Technicians Loc.* 780, *id.* at 19), and (2) where "special circumstances" warrant giving priority to the second suit. See, e.g., *First City Nat'l Bank, id.* at 79. See also *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006) (citing "first-to-file" rule, holding that district court did not abuse its discretion in refusing to transfer case where first-filed case was in New York and exceptions did not apply). As demonstrated herein, neither of these exceptions applies.

II. *SINCE THE LLAGAS CASE HAS BEEN PENDING SINCE 2017, THE LOUISIANA COURT IS THE APPROPRIATE FORUM TO DETERMINE WHETHER THE FIRST-TO-FILE RULE OR AN EXCEPTION SHOULD APPLY*

"The 'first-to-file' rule has generally been interpreted to dictate not only which forum is appropriate, but also which forum should *decide* which forum is appropriate." *Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 328 (E.D.N.Y. 2014), quoting *EMC Corp. v. Parallel Iron*, LLC, 914 F. Supp. 2d 125, 129 (D. Mass. 2012); *Speedfit,* id, at 571 n.4, *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 n.2 (S.D.N.Y. 2001) ("The court in which the first-filed case was brought decides whether the first-filed rule or an exception to the first-filed rule applies."); *Congregation Shearith Israel v. Congregation Jeshuat Israel*, 983 F. Supp. 2d 420, 422 (S.D.N.Y. 2014) (noting Southern District of New York's "bright-line rule" that the first-filed forum decides whether exception to first-to-file rule applies).

---

[5] In Plaintiff's motion to certify the class action in *Llagas*, Plaintiff states "[t]he class that Plaintiff seeks to represent consists of those seafarers employed aboard the Sealift vessels from and after January 21, 2013 to the date the Court's order of class certification becomes final and non-appealable" noting that Plaintiff will file an amended complaint shortly after the Court determines whether or not his claims are subject to arbitration. (Ex. G: Memo of Law in Support of Plaintiff's Motion to Certify Class Action, *Llagas* ECF 36-1, PageID #318 and Proposed Order *Llagas* ECF 36-14. PageID # 1090-1091.)

Because the *Llagas* case has been pending in the Western District of Louisiana since March 2017, the *Llagas* Court should be the forum to decide whether the "first-to-file" rule dictates which of the two cases proceeds, and in which forum. Respectfully, this Honorable Court should transfer this action to the Western District of Louisiana where *Llagas* is pending, or alternatively, stay the action pending a decision by the Louisiana Court regarding the applicability of the first-filed rule. *Juniper Networks, Inc. v. MOSAID Techs. Inc.*, 2012 U.S.Dist. Lexis 41122 at *5 (N.D. Cal. March 26, 2012) ("If the first-to-file rule applies, the court in which the second suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in which the first suit was filed to decide whether to try the case" citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 622 (9th Cir. 1991). *Id.* (transferring second-filed action to court of first-filed case); *Silver Line Bldg.*, 12 F. Supp. 3d at 329 (collecting cases and staying the second action pending resolution of motion to transfer second-filed case); *Congregation Shearith*, 983 F. Supp. 2d at 49 (dismissing second action because the court in the first-filed case had issued a preliminary decision to proceed despite the second action).

III.     IN THE EVENT THAT THIS COURT BELIEVES IT MUST DETERMINE HOW THE FIRST-TO-FILE RULE SHOULD APPLY, IT SHOULD HOLD THAT APPLICATION OF THE RULE WARRANTS DISMISSAL OF THE INSTANT BADURIA CASE IN DEFERENCE TO THE LLAGAS CASE, OR ALTERNATIVELY, TRANSFER THIS CASE TO THE WESTERN DISTRICT OF LOUISIANA

Some Courts in this district, despite being the forums for the *second*-filed actions, have applied the "first-to-file" rule and dismissed or transferred the second-filed action, holding that "[p]ursuant to this rule, a district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action." [1]*Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d. 401 (E.D.N.Y. 2013) (dismissing putative collective FLSA action in favor of a prior-filed collective FLSA action in Colorado) citing *Byron v. Genovese Drug Stores*, Inc., 2011 U.S. Dist. Lexis 120210, 2011 WL

11

4962499 *2 (E.D.N.Y. 2011). This discretion arises from the court's power to administer its docket to conserve judicial resources, and to promote the efficient and comprehensive disposition of cases. *Id.* See also *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235 (E.D.N.Y. 2012) (applying first-to-file rule to transfer later-filed putative collective and class action to California forum where first such action was pending).

Application of the "first-to-file" rule to the facts in this matter warrants dismissal of the *Baduria* case in deference to the *Llagas* case, which has been pending for two years. As noted above, the two exceptions to the first-to-file rule are (1) where the "balance of convenience" favors the second-filed action, and (2) where "special circumstances" warrant giving priority to the second suit. *Motion Picture Lab. Technicians Loc. 780, id., First City Nat'l Bank, Id.* Neither exception applies, and as a result, the "first-to-file" rule dictates that the *Llagas* case has priority.

The "special circumstances" exception is "quite rare" and the Second Circuit has identified "only a limited number of circumstances" when it can be used to give precedence to a second-filed suit. *Emplrs. Ins. v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). One such circumstance exists where the first-filed lawsuit is an "improper anticipatory declaratory judgment action… filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (emphasis added). Another special circumstance is "where forum shopping alone motivated the choice of the situs for the first suit." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (emphasis added). The first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or *de minimis* that a full "balance of convenience" analysis would not be necessary to determine that the second forum is more appropriate than the first. *Emplrs. Ins., id.* at 276. This

case does not involve a declaratory judgment or other action commenced as a preemptory strike by an opponent. On the contrary, the putative class representatives and their counsel are the *same* in both cases. *They* chose the Louisiana forum for their class action first, before determining to bring an overlapping class action claim before this Court after their motion for class certification was fully briefed, and denied because arbitration was found to be mandatory in the Louisiana action. In such circumstances, "[t]he typical concern of anticipatory litigation is not present and, if anything, it is [P]laintiffs who are the cause of the duplicative and confusing procedural stances of these cases." *Tate-Small v. Saks Inc.*, 2012 U.S. Dist. LEXIS 76081 at *13 (S.D.N.Y. May 31, 2012).

The second exception to the "first-to-file" rule applies where the balance of convenience and interest of justice favors the second action. *Wyler-Wittenberg, id.* at 246, citing *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991). Courts deciding whether an exception to the "first-to-file" rule is warranted apply the convenience factors under 28 U.S.C. §1404(a). "The factors to be considered in weighing the balance include: (1) the convenience of the witnesses, as well as the availability of process to compel their attendance if unwilling; (2) the location of relevant documents and ease of access to sources of proof; (3) the convenience and relative means of the parties; (4) the locus of the operative facts; (5) the forums' respective familiarity with the governing law; (6) the weight accorded to the plaintiff's choice of forum; (7) trial efficiency and the interests of justice; and (8) any other relevant factors special to the two cases." *Rico Records Distributors, Inc. v. Ithier*, 364 F. Supp. 2d 358, 361 (S.D.N.Y. 2005); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002). Application of these factors does not justify a departure from the "first-to-file" rule. A plaintiff's choice of forum (factor 6) is traditionally "given great weight." *D.H. Blair & Co v. Gottdeiner*, 462 F.3d 95 at 107 (2d Cir.

2006). However, in "first-to-file" cases, which favor litigation in the forum where the first suit is brought, it is the first choice of forum—here Louisiana—that is entitled to considerable weight. *Masluf Realty Corp. v. Markel Ins. Corp.*, 2014 U.S. Dist. Lexis 41435 at *14 (E.D.N.Y. March 27, 2014) (Irizarry, J.) (stating, in first-to-file case, that "it is [Defendant's] choice of forum which should be entitled to great weight rather than [Plaintiff's] choice of forum"); *Wyler-Wittenberg*, 899 F. Supp. 2d 235 at 249 (E.D.N.Y. 2012).

Moreover, the weight given to plaintiff's choice is diminished where the operative facts are not meaningfully connected to the chosen forum (factor 4) or where plaintiff does not reside in the chosen forum. See, *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348-49 (E.D.N.Y. 2012) (internal citations omitted). Per their Complaint, Plaintiffs and the putative class members "were neither citizens of the Unites States, nor aliens lawfully admitted to the Unites States for permanent residence" (Complaint ¶19, P.8), and so do not reside in New York. Likewise, the operative facts are not meaningfully connected to New York, as Plaintiffs allege that they and other foreign national seafarers were working on Sealift vessels in violation of law while "engaged in foreign voyages to foreign countries" (Complaint ¶20, P.8), and allege no facts specific to New York.

None of the other factors supports New York as a more convenient or just forum than Louisiana. The "convenience and relative means of the parties" (factor 3) does not weigh in favor of New York, as the named Plaintiffs, who are Filipino citizens residing in the Philippines, can no more easily conduct their lawsuit from New York than from Louisiana; indeed, as they are already voluntarily pursuing the *Llagas* case in Louisiana, presumably that forum is convenient for them. Additionally, in both cases Plaintiffs have the same class counsel who are located both in Louisiana and New York. Likewise, as to the convenience of witnesses (factor 1), as Plaintiffs and other class

14

3338952-1

members who reside abroad will likely serve as witnesses, New York is no more convenient than Louisiana. As for defense witnesses, Defendants already are litigating in Louisiana and have appeared at a deposition already. Some non-party defense witnesses may reside abroad, e.g., the Philippines, and any non-party defense witnesses in New York are subject to process.

As to factor 2, the location of relevant documents and ease of access to sources of proof, given the availability of electronic documents and email, and overnight shipping, this factor is far less important now than it once was. *Speedfit, id.* at 577. Plaintiffs allege that the relevant documents are in the possession of Defendants, including "Crew Lists, Passenger Lists, Shore Party Lists, pay vouchers, pay records, employment contracts, rough and smooth engine department logs, rough and smooth deck department logs and written and computer logs from the Master, First Mate, Chief Engineer and First Officer..." (Complaint, ¶21, P.8). Courts consider this factor primarily when documents are particularly bulky or difficult to transport, or there is proof that it is somehow a greater imposition for one party than the other to transport its evidence to the proposed forums. *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995). Certain of these items, including employment contracts and pay records, are equally in the possession of Plaintiffs, while others are in the possession of foreign manning agents. To the extent they are solely in the possession of Defendants, they are no more difficult for Defendants to produce to Plaintiffs in Louisiana than in New York. Indeed, in the *Llagas* suit, Defendants have already produced roughly 3,000 pages of documents in response to ninety-one (91) Requests for Production of Documents served by Plaintiff Llagas. *See* Declaration of Daniel A. Tadros dated February 20, 2019, ¶5.

Factor 5, "the forums' respective familiarity with the governing law" weighs, if at all, in favor of Louisiana. "[W]here an action does not involve complex questions or another state's laws,

15

3338952-1

courts in this district accord little weight to this factor on a motion to transfer." *Merkur v. Wyndham Int'l, Inc.*, 2001 U.S. Dist. LEXIS 4642, at *1, *5, 2001 WL 477268, at *1, *5 (E.D.N.Y. 2001) (citing *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 759 (S.D.N.Y. 1980)). The Louisiana Federal Court is just as capable as this Honorable Court of interpreting federal law on this issue. The Louisiana Court is intimately more familiar with the legal issues and facts that are pertinent to the instant action. See *Wyler-Wittenberg, Id.* at 249.

The last two factors, (7) trial efficiency and the interests of justice, and (8) any other relevant factors special to the two cases, weigh heavily in favor of the Louisiana Court and thus against departure from the "first-to-file" rule. The interests of justice component of a court's transfer analysis may itself be determinative, particularly in a first-to-file case, even if the other convenience factors suggest a different result. *Tate-Small*, 2012 U.S. Dist. LEXIS at *17 (transferring second-filed collective and class action to avoid duplicative discovery and motion practice and re-litigation of issues and risk of inconsistent results), even though "[w]ere this case to be decided without presumption of the first-filed rule transfer would be" problematical) citing *Tucker Anthony, Inc. v. Bankers Trust Co.*, 1994 U.S. Dist. LEXIS 128 (S.D.N.Y. January 10, 1994). In *Tucker Anthony*, the Court noted the Second Circuit's "strong policy favoring litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Id.* at *26-27, quoting *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977 (1968).

The Louisiana case, which has been pending for almost two years, is farther advanced than this one, and the assigned Judges have greater familiarity with the issues. As evidenced by the *Llagas* Stipulation and the *Baduria* Complaint's pre-emptive attempt to disavow Plaintiffs'

16

3338952-1

employment agreements (including Plaintiff Llagas's agreements, which the Louisiana Court has recognized as relevant and enforceable), a central dispute in this case is whether Plaintiffs' claims are subject to foreign arbitration, and whether resulting inability to prosecute their claims here bars them from acting as class representatives. These issues (and more) have been extensively briefed to the Louisiana Court, have been decided (twice) by Magistrate Judge Kay, and are pending for determination by the District Judge. Moreover, it would be against the interests of justice to permit Plaintiffs to circumvent the Louisiana Court's rulings in Defendants' favor on these fundamental issues by bringing a second, overlapping class action, or by forcing Defendants to litigate what essentially is the same class action in two different forums.

Dismissal or transfer of this action is appropriate to implement the principles behind the "first-to-file" rule. "Dismissal is appropriate not only to promote docket efficiency and interests of comity, but also to avoid burdening a party with litigating the same matters in separate lawsuits." *Castillo*, 960 F. Supp. 2d at 404, citing *Curtis v. Citibank*, 226 F.3d 133 (2d Cir. 2000) (dismissing later filed action); see also *Masluf Realty*, 2014 U.S. Dist. LEXIS at 41435 (same); *Thomas*, 2015 U.S. Dist. LEXIS at 14574 (same); *Tate-Small*, 2012 U.S. Dist. LEXIS at 14574 (transferring later filed collective and class action); *Wyler-Wittenberg*, 899 F. Supp. 2d at 235 (same).

For the same reasons, if this Honorable Court determines that the "first to file" rule applies and the Louisiana action should proceed, a stay of this action is not appropriate. A stay would not further the principles of judicial economy and freedom from duplicative and vexatious lawsuits. Retaining jurisdiction could require the court at a later date to reexamine issues already raised and examined in the earlier suits and would risk inconsistent results. *Id.* at 247; *Thomas*, 2015 U.S. Dist. LEXIS at *13-14.

## Conclusion

In sum, Plaintiffs have improperly filed a duplicative lawsuit, which is substantively identical to and involves effectively the same parties as litigation that has been ongoing in Louisiana for nearly two years. Defendants respectfully urge this Honorable Court to apply the "first to file" rule to stay this case pending a determination by the United States District Court for the Western District of Louisiana which case should proceed or, alternatively, to either dismiss this suit or transfer it to the Western District of Louisiana.

Dated: New Orleans, Louisiana
February 20, 2019

                                Respectfully submitted,

                                CHAFFE MCCALL LLP
                                *Attorneys for Defendants*

                        By: /s/ Daniel A. Tadros
                              Daniel A. Tadros,
                              Alan R. Davis,
                              Ifigeneia Xanthopoulou,
                              **CHAFFE McCALL, LLP**
                              1100 Poydras Street, Suite 2300
                              New Orleans, LA 70163
                              Tel: (504) 585-7054

3338952-1